IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

PAMELA S. CHAPMAN,

        Plaintiff,

        v.

DEPARTMENT OF REVENUE,
State of Oregon,

        Defendant.

)
)
)   TC-MD 150018N
)
)
)
)
)
)
)   **FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered September 11, 2015. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiff appeals Defendant's Notice of Deficiency Assessment, dated November 26, 2014, for the 2010 tax year. A trial was held on July 8, 2015, in the Oregon Tax Courtroom in Salem, Oregon. Nicholas Chapman (Chapman), Plaintiff's son, appeared on behalf of Plaintiff. Plaintiff testified on her own behalf. Sam McKillip (McKillip), an excavation contractor, and Gary Killion (Killion), an All Oregon Excavating LLC (AOE) employee, each testified on behalf of Plaintiff. Ron Graham (Graham) and Larry Boyd (Boyd), Tax Auditors, appeared on behalf of Defendant. Boyd, Graham, and Greg Harris (Harris), Tax Auditor, testified on behalf of Defendant. Plaintiff and Chapman also testified at Defendant's request. Plaintiff's Exhibits 1 through 4 and 6 through 10 were received without objection. Defendant's Exhibits A, C-1 through C-8, E, G-1, H, I, L, M O, and T were received, some over Plaintiff's objections.

## I. STATEMENT OF FACTS

Plaintiff appeals Defendant's disallowance of her 2010 Schedule C business expenses for costs of goods sold (CoGS), depreciation, insurance, repairs and maintenance, taxes and licenses,

utilities, and other expenses including fuel and bonding. (*See* Ptf's Compl at 2, 3.) She claimed that those expenses were incurred for her business, AOE. (*See* Def's Ex A at 6.)

A.    *Procedural History*

Plaintiff's 2010 U.S. and Oregon income tax returns were prepared and filed by her former Certified Public Accountant (CPA). (*See* Def's Ex A at 4.) Harris testified that Defendant assigned him to perform a Schedule C audit on Plaintiff's 2010 return. Following the audit, Defendant issued a Notice of Deficiency, which Plaintiff appealed and requested a conference. Plaintiff, her attorney, her new CPA, and Harris participated in the conference. Defendant's conference decision was issued on November 25, 2014. (*See* Def's Ex E.)

Harris testified that, during both the audit and the conference, he encountered comingling, inconsistencies, and unqualified expenses in Plaintiff's records. (*See* Def's Ex C at 1.) He testified that Plaintiff provided receipts that included personal, living, and family expenses. Harris testified that Plaintiff provided receipts for building materials, bark dust, and landscaping. He testified that he was provided with no adequate explanations of how those expenses related to a trucking and excavating business. Harris testified that Plaintiff previously admitted that those receipts should not have been included in the information provided to Defendant and she had no knowledge of why they were provided.

The following table displays the amounts claimed on Plaintiff's 2010 Schedule C, the amounts allowed at the audit, the amounts allowed at the conference, and the adjustments made between the audit and conference:

| | Plaintiff's Return | Audit | Conference | Adjustments Between Audit and Conference |
|---|---|---|---|---|
| **Gross Income** | $89,203 | $89,203 | $89,203 | $0 |

| Expenses: | | | | |
|---|---:|---:|---:|---:|
| CoGS | $35,151 | $253 | $253 | $0 |
| Depreciation | $35,004 | $27,804 | $27,804 | $0 |
| Insurance | $5,009 | $4,072 | $4,122 | $50 |
| Interest | $459 | $459 | $459 | $0 |
| Office Expense | $0 | $110 | $110 | $0 |
| Repairs and Maintenance | $15,664 | $3,883 | $5,019 | $1,136 |
| Taxes and Licenses | $4,422 | $1,140 | $1,140 | $0 |
| Utilities | $1,979 | $0 | $0 | $0 |
| Other (Fuel and Bonding) | $12,075 | $909 | $909 | $0 |
| **Total Expenses:** | $109,763 | $38,630 | $39,816 | $1,186 |

(Def's Exs A at 6, C at 4, E at 5.)

B.      *All Oregon Excavating LLC (AOE)*

Plaintiff testified that as a family, she, Chapman, and Chapman's former wife formed

AOE. (*See generally* Ptf's Ex 8 at 5). She testified that AOE initially struggled to generate

sufficient cash flow to continue providing trucking and excavating services in 2010. Plaintiff

and Chapman testified that Chapman often transferred money to AOE to help alleviate that

burden. (*See generally* Ptf's Ex 2.) Plaintiff testified that AOE's primary activities included the

use of dump trucks to haul debris, excavation, and the creation and administration of bids for

those activities. She testified that AOE conducted business across the state of Oregon and

possibly parts of Washington, although she was unsure.

C.      *AOE Associates*

Through her testimony, Plaintiff confirmed that AOE's business address was the same as

her residential address. (*See* Ptf's Ex 8 at 5; Def's Ex A at 1.) Plaintiff testified she considered

herself self-employed in 2010, notwithstanding her full time employment at Rivermark

Community Credit Union. Plaintiff testified that her hours spent working for AOE varied in

2010. She testified that those hours generally consisted of "look[ing] at bids," conversing with AOE drivers, dispatching, performing various administrative tasks, writing checks, and occasionally hauling equipment to work sites. Plaintiff testified she often conferred with Chapman when she undertook those tasks.

Plaintiff testified that Chapman is her son and the manager of AOE. She testified that Chapman was the main driver for AOE and he performed many of the same tasks as she, including signing AOE checks. Harris testified that he received conflicting information regarding Chapman's involvement in AOE. Harris testified that he was initially told that Chapman was only involved in the business in emergencies, but was later told that Chapman was 100 percent involved in the business, signed all checks, and did all of the driving. Harris testified that Chapman owned American Dirt, NC Transport, and NC Farm & Ranch, each of which he observed to have transactions with AOE.

D.    *AOE Records, Bookkeeping, and Finances*

Plaintiff testified AOE's books were not done well in 2010 and that neither she nor Chapman had any finance or accounting background or knowledge. She testified that she was the only person tracking AOE's finances, although Chapman provided her with receipts for AOE. Chapman testified that he kept receipts for AOE in a separate file from his other businesses and personal expenses and would provide Plaintiff with that file around tax time.

Plaintiff provided the court with invoices for companies other than AOE, such as McKillip Excavating, Get-R-Done Concrete, LLC, NC Transport, and Chapman personally. (*See* Ptf's Ex 6 at 12, 13, 25, 27, 28, 30, 32, 33, 35, 36, 38, 67, 69, 70, 74, 97, 105, 107.) Plaintiff testified that some of Chapman's miscellaneous receipts may have become physically comingled with AOE's receipts provided in the evidence submitted to Defendant and the court.

Chapman testified that the receipts supplied during the audit and conference that do not reference "All Oregon Excavating" are expenses that are not currently being claimed by Plaintiff. Upon request for clarification by Defendant, Plaintiff confirmed that, notwithstanding the fuel and NAPA Auto Parts invoices, if the evidence provided does not reference AOE, then she is not claiming the expense. Plaintiff testified that she was not claiming the cash receipts.

E.    *Schedule C Expenses*

Plaintiff provided exhibits with transaction summary cover pages for the following expense categories: "Yanmar Bill of Sale and Interest Payment," "Fuel Receipts," "CoGS", "Licenses and Fee[]s", "Office Supplies and Postage", and "Shop [and] Equipment Rental". (Ptf's Exs 3, 4, 6, 8-10.) She testified that the expenses she claimed are reasonable for an excavating and trucking business. Chapman testified that Defendant cannot disprove the expenses and that the expenses "need to make sense in a logical person's mind."

1.    *CoGS*

On her 2010 return, Plaintiff claimed a CoGS expense of $35,151 to offset $89,203 of gross receipts. (Def's Ex A at 6.) Defendant allowed $253 of her claimed CoGS. (Def's Ex C at 6.) Plaintiff's exhibit pertaining to CoGS included receipts, invoices, and canceled AOE checks. (Ptf's Ex 6.) The AOE canceled checks provided total $11,082.[1] (*Id.*) The AOE checks are made out to businesses including Les Schwab, Triad Machinery, Willamette Landscape Supply, Marion Ag. Services, Inc., and Chapman's company, American Dirt, LLC. (*See generally* Ptf's Ex 6.)

Plaintiff's CoGS exhibit includes invoices not addressed to AOE, but instead addressed to Nick Chapman, NC Transport, McKillip Excavating, Get-R-Done Concrete, LLC, and

---

[1] Several of the checks provided by Plaintiff were duplicates. (*See, e.g.,* Ptf's Ex 6 at 75, 79.)

"Aurora Fleet Sales & Svc." (Ptf's Ex 6 at 12, 13, 25, 27, 28, 30, 32, 33, 35, 36, 38, 64, 65, 66, 67, 69, 70, 74, 97, 105, 107.) Plaintiff provided a letter written and signed by an associate, Tina Wilson, of TWGW Inc. NAPA Auto Parts doing business as Aurora Heavy Duty Store. (Ptf's Ex 6 at 54.) That letter stated that cash purchases are recorded under a cash account named "Aurora Fleet Sales & Svc," which is used for promotional purposes. (*Id.*) Receipts, invoices, and canceled checks to NAPA total $2,312.11. (*Id.* at 55-66.)

Boyd testified that, of the documents Plaintiff provided in her CoGS exhibit packet, Defendant previously allowed approximately $9,000 during the audit and conference under difference expense categories, including repairs and maintenance. He testified that the conference officer allowed the NAPA Auto Parts payments. Boyd testified that the remaining expenses were disallowed due to lack of adequate substantiation. Boyd testified that Defendant disallowed the invoices naming Chapman's company, NC Transport. (*See* Ptf's Ex 6 at 25, 27, 28, 30, 32, 33.) He testified that Defendant disallowed a $600 payment to Pablo Navarro for "landscaping w plants supplies" and a $1,000 payment to American Dirt for "trees" because he could not understand the business purpose of either purchase for an excavating company such as AOE. (*Id.* at 92-93, 100.) Boyd testified that he suspected those purchases were for Chapman's business.

2. *Depreciation*

Plaintiff claimed a depreciation deduction of $35,004. (Def's Ex A at 6.) Plaintiff reported a like-kind exchange on her 2010 return. (Def's Ex A at 11-12.) She testified she exchanged her 2009 Dodge truck for a 2011 Dodge truck with a transfer basis of $46,340. (*See id.* at 11.) Plaintiff claimed a special depreciation allowance for the 2011 Dodge truck of $23,170, equal to 50 percent of the cost or, in this case, the transfer basis. (*Id.* at 9.) The special

depreciation allowance reduced the general depreciation basis to $23,170, of which Plaintiff claimed a $4,634 depreciation deduction. (*Id.*) Defendant allowed the depreciation deductions totaling $27,804 for the Dodge truck. (Def's Ex C at 6-7.)

Boyd testified that Defendant disallowed the remaining $7,200 depreciation deduction for the track hoe because Plaintiff did not substantiate its purchase price or value. (*See also* Def's Exs A at 9, 12, C at 6-7, E at 2.) Plaintiff testified that, on behalf of AOE, she purchased a 2005 Yanmar VIO50 track hoe (Yanmar) for $22,500 from Chapman in July 2009. (*See* Def's Ex A at 12; *see generally* Ptf's Ex 3.) She provided an exhibit containing three documents related to the Yanmar. (Ptf's Ex 3.) Those documents are a written agreement, a check, and an insurance quote for the Yanmar. (*Id.*)

The agreement is signed by Plaintiff and Chapman and dated July 1, 2009. (Ptf's Ex 3 at 1.) It states that Chapman agreed to sell AOE a "2005 Yanmar VIOL 50 Excavator" on July 1, 2009, for $22,500, with full payment due no later than December 31, 2015, and zero percent interest. (*Id.*) The check, dated November 4, 2010, is from AOE to Chapman for $500. (*Id.* at 2.) The check displayed an illegible signature and a blank memo line. (*Id.*) On the cover page to Exhibit 3, Plaintiff wrote that the check was to Chapman "as an interest only payment." The insurance quote is from Liberty Northwest Insurance for "miscellaneous tools" and a "2005 Yanmar 50 Mini Excavator." (*Id.* at 3.)

3.    *Insurance*

Plaintiff claimed insurance expenses of $5,009. (Def's Ex A at 6.) Harris initially allowed $4,072 of the claimed expenses during the audit and the conference officer allowed an additional $50 for a total of $4,122. (Def's Exs C at 4, E at 5.) Plaintiff did not provide any evidence pertaining to insurance expenses.

4. *Repairs and Maintenance*

Plaintiff claimed repairs and maintenance expenses on her Schedule C of $15,664. (Def's Ex A at 6 (Ptf's Schedule C).) Harris allowed $3,883 of the claimed expenses during the audit and the conference officer allowed an additional $1,136, for a total of $5,019. (Def's Ex C at 4, E at 5.) Plaintiff did not provide evidence pertaining to repair and maintenance expenses, other than those documents included in the CoGS exhibit.

5. *Taxes and Licenses*

Plaintiff claimed a deduction of $4,422 for taxes and licenses, of which Harris allowed $1,140.[2] (Def's Exs A at 6, C at 4.) Plaintiff's evidence regarding licenses and fees paid in 2010 consists of documentation for transactions with the Driver and Motor Vehicle Services Division (DMV), the Oregon Secretary of State, and the City of Donald. (*See* Ptf's Ex 8.)

a. DMV

Plaintiff provided a copy of AOE's check dated September 27, 2010, to the DMV for $209. (Ptf's Ex 8 at 1.) The memo line is blank, but Oregon plate numbers HU51035 and HU60060 are written at the top of the check. (*Id.*) Plaintiff provided two "Notice[s] of Transaction Submitted," each dated September 27, 2010. (*Id.* at 2-3.) Each notice referenced one of the two plates. (*See id.*)

b. Secretary of State

Plaintiff provided a copy of AOE's check number 1553 dated January 25, 2010, to "Sec of State" for $200. (Ptf's Ex 8 at 4.) "Registrations" was written in the memo line. (*Id.*) Plaintiff provided AOE's renewed business registration, which was stamped "filed" on January 25, 2010. (*Id.* at 5.) On the business registration, "Check #1553" is hand written in the top right

---

[2] Harris' auditor's report does not identify to which specific expenses the $1,140 he allowed pertained. (*See* Def's Ex C at 6-7.)

corner of the document. (*Id.*) A "Application For Reinstatement/Reactivation," filed January 25, 2010, reflected a filing fee of $150. (*Id.* at 6.) Harris testified that he allowed $150 of the $200 claimed. He testified that he disallowed the $50 that he did not find directly related to AOE's business.

c. City of Donald

Plaintiff provided a copy of AOE's check for $25 dated October 19, 2010, to "City of Donald." (Ptf's Ex 8 at 9.) "Gas License" was written in the memo line. (*Id.*) Plaintiff provided a copy of AOE's City of Donald License with an expiration date of August 28, 2010, and an annual fee of $25. (*Id.* at 10.)

6. *Utilities*

Plaintiff claimed utility expenses of $1,979 on her Schedule C. (Def's Ex A at 6.) Defendant disallowed all of her claimed utility expenses in its audit and conference decision due to lack of substantiation. (Def's Exs C at 8, E at 2, 5.) Plaintiff did not provide any evidence pertaining to her claimed utilities expenses. Defendant provided portions of AOE's general ledger, which reported three checks to PGE, dated July 16, 2010, August 9, 2010, and September 18, 2010, in the amounts of $185.25, $332.96, and $327.23, respectively. (Def's Exs I at 26, O at 8, 14.) Plaintiff testified that the general ledger she provided to Defendant was prepared by AOE's current bookkeeper on August 11, 2014, for the purpose of the audit. Neither party provided canceled checks to PGE corresponding to those reported in Plaintiff's general ledger.

7. *Fuel Expenses*

On her Schedule C, Plaintiff claimed expenses of $9,443 for "fuel." (Def's Ex A at 6-7.) During the audit, Harris allowed $809 for fuel, which was upheld in the conference decision. (Def's Exs C at 4, E at 5.) Plaintiff provided evidence that included invoices from Ernie Graham

Oil addressed to Chapman and AOE checks made out to Ernie Graham Oil, totaling $8,274. (Ptf's Ex 4.) Plaintiff testified that AOE could not get an account in its name with Ernie Graham Oil due to a lack of credit history, but Chapman was able to get a second account in his name that AOE could use. Boyd testified that Plaintiff's claimed fuel expenses were, in large part, disallowed due to lack of substantiation and concerns about comingling. Graham testified that, as of the date of trial, Defendant would be willing to allow Plaintiff half of her claimed fuel expenses.

McKillip testified that he is an excavation contractor and he owns two dump trucks. He testified that he is familiar with AOE's dump truck, the Western Star. McKillip testified that dump truck hauling typically costs $100 to $300 per day for approximately 50 to 100 gallons per day. He testified that Plaintiff's claimed fuel expense of $9,443 would suggest approximately 40 truck loads. McKillip testified that he had a storage yard in Donald in 2010 and he saw AOEs truck leave for jobs at least 50 to 100 days in 2010.

Killion testified that he drove dump trucks for AOE in 2010. He testified that he used an average of 50 to 60 gallons of fuel per day, depending on whether he was hauling. Killion testified that, in 2010, he bought fuel at the Pacific Pride using an AOE credit card with Chapman's name on it. Killion initially testified that he worked over 300 days for AOE in 2010, but subsequently revised his testimony to about 230 days, or possibly less.

8.    *Bond Expenses*

On her Schedule C, Plaintiff claimed expenses of $2,632 for "bond." (Def's Ex A at 6-7.) During the audit, Harris allowed $100 for bonds, which was upheld in the conference decision. (Def's Exs C at 4, E at 5.) Plaintiff did not provide any evidence pertaining to bond expenses.

## II. ANALYSIS

The issue presented in this case is whether and to what extent the business expenses claimed by Plaintiff on her 2010 Schedule C should be allowed. "The Oregon Legislature intended to make [Oregon] personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject only to modifications specified in Oregon law." *Ormsby v. Dept. of Rev.*, 18 OTR 146, 151 (2004), citing ORS 316.007.[3] As a result, the legislature adopted, by reference, the federal definitions for deductions, including those under IRC section 162 for trade or business expenses.

A.  *Standard of Review and Burden of Proof*

"All proceedings * * * of the tax court shall be original, independent proceedings and shall be tried * * * de novo." ORS 305.425(1). In a de novo proceeding, the tax court considers properly admitted testimony and evidence presented at trial "to reach the correct result without regard for either party's prelitigation positions." *Reed v. Dept. of Rev.*, 310 Or 260, 268, 798 P2d 235 (1990). The court has jurisdiction to determine a taxpayer's tax liability, thereby correcting "any shortcomings that occurred during administrative adjudication * * *." *Curtis v. Dept. of Rev.*, 17 OTR 414, 420 (2004). In making its determination, "[t]he court is not limited to the evidence that a taxpayer presented during an audit by the Oregon Department of Revenue (Department)." *Shammel v. Dept. of Rev.*, TC-MD 120838D, WL 3964348 at *3 (Jul 31, 2013).

Plaintiff is the party seeking relief in this matter and she, therefore, bears the burden of proof to substantiate her claims by a preponderance of the evidence. *See* ORS 305.427; *Reed*, 310 Or at 265. The phrase "preponderance of the evidence" means "the greater weight of evidence, the more convincing evidence." *Yarbrough v. Dept. of Rev.*, 21 OTR 40, 44 (2012),

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2009.

quoting *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). Defendant's notice is upheld if Plaintiff's "evidence is inconclusive or unpersuasive* * *." *Reed*, 310 Or at 265. For Plaintiff to prevail, the evidence and testimony must "demonstrate that the Department's earlier decision was wrong * * *." *Id.* The court typically cannot rely upon Plaintiff's testimony alone, since such testimony tends to be self-serving. *See Hudspeth v. Dept. of Rev.*, 4 OTR 296, 298 (1971).

In this matter, some of Plaintiff's claimed deductions involve payments to related parties. The court reviews related party transactions with heightened scrutiny. *Chapman v. Comm'r*, 107 TCM (CCH) 1433, 2014 WL 1809612 at *3 (US Tax Ct). However, "a genuine transaction should [not] be disregarded for tax purposes simply because it occurred between related parties." *Chapman*, 2014 WL 1809612 at *3.

At trial, Plaintiff's representative, Chapman, repeatedly noted that this appeal is de novo and objected to some of Defendant's evidence on the basis that it was received during the prior audit or conference. Plaintiff is correct that this is a de novo proceeding. However, Plaintiff appears to misunderstand the effect of the court's de novo review on Defendant's prior adjustments to Plaintiff's 2010 Oregon income tax liability. Plaintiff is the party seeking relief and, therefore, bears the burden of proof by a preponderance of the evidence. As the court stated during trial, if Plaintiff fails to establish her entitlement to a deduction previously disallowed by Defendant, then Defendant's adjustment is upheld.

To the extent that Defendant previously allowed a deduction claimed by Plaintiff, the court will accept Defendant's determination. The court need not make factual findings and legal conclusions with respect to deductions agreed upon by the parties. Defendant previously allowed $39,816 of Plaintiff's claimed expenses, which totaled $109,763. *See supra* 2-3.

/ / /

B.      *Schedule C Business Deductions*

The IRC allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]"  IRC § 162(a).  To be "ordinary," "the transaction which gives rise to [the expense] must be of common or frequent occurrence in the type of business involved."  *Deputy v. DuPont*, 308 US 488, 495, 60 S Ct 363, 84 L Ed 416 (1940), citing *Welch v. Helvering*, 290 US 111, 114, 54 S Ct 8, 78 L Ed 212 (1933); s*ee also Chapman*, 2014 WL 1809612 at \*3 (stating that an expense is ordinary if it is "normal, customary, or usual within the relevant business").  Necessary expenses are "appropriate and helpful" to the business.  *Welch*, 290 US at 113.  Expenses considered personal, living, or family expenses are generally not deductible.  IRC § 262(a).  Deductions are a matter of "legislative grace" and the burden of proof is placed on the individual claiming the deduction.  *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992) (citations omitted).

An expense is deductible when the payment is substantiated through sufficient records. *Chapman*, 2014 WL 1809612 at \*5.  The taxpayer is responsible for maintaining records that are "sufficient to establish the amount of gross income and deductions."  Treas Reg §1.6001-1(a); *see also* IRC § 6001.  "[T]he combination of an invoice marked 'paid,' a check register or carbon copy of the check, and an account statement that shows the check number, date, and amount will generally prove payment of an amount."  Rev Proc 92-71, 1992-35 IRB 17, 1992-2 CB 437, § 4. If the taxpayer is unable to substantiate a deductible expense sufficiently and fully, the court can allow an estimated amount given a reasonable evidentiary basis.[4]  *Compare Cohan v. Comm'r*, 39 F 2d 540, 543-44 (1930) *with, Vanicek v. Comm'r*, 85 TC 731, 743 (1985).

---

[4] The court is unable to estimate certain categories of expenses, such as travel and entertainment; for which taxpayer would have to "substantiate by adequate records or by sufficient evidence corroborating the taxpayer's own statement[,]" the amount, time, place, business purpose, and business relationship of the person entertained.  IRC § 274(d)(4); *see also Sentinel Fin. Servs. v. Comm'r.*, 39 F3d 1188, (9th Cir 1994).

As Plaintiff acknowledged at trial, her recordkeeping in 2010 was disorganized. The result is that Plaintiff's evidence is confusing. Plaintiff maintains that she is entitled to all of the expenses reported on her 2010 Schedule C, yet she failed to provide evidence corresponding to several of the claimed amounts. For instance, Plaintiff provided no evidence of her expenses for insurance,[5] utilities, or bonds. Plaintiff provided some evidence of expenses properly categorized as repairs and maintenance, but they were provided in an exhibit labeled "Cost of Goods Sold." Plaintiff provided some exhibits that she conceded were not expenses of AOE, including invoices that named other entities. She also provided evidence of expenses that lacked any discernible business purpose, such as payment for landscaping and trees.

Plaintiff testified that, as of 2014, she had hired a bookkeeper on behalf of AOE. The court commends Plaintiff's for her efforts to improve her recordkeeping subsequent to 2010. For the 2010 tax year, the court must make a determination based on the available evidence. The court will allow Plaintiff deductions only for those expenses that are adequately substantiated and that were not previously allowed by Defendant.

1.      *Costs of Goods Sold (CoGS)*

CoGS "is taken into account in computing gross income and is not an item of deduction." *Velinsky v. Comm'r*, 71 TCM (CCH) 2766, WL 173544 at *3 (1996) (citations omitted). A CoGS expense is appropriate "to offset receipts from the eventual sale of goods." *Hillenga v. Dept. of Rev.*, 21 OTR 396, 411 (2014). Expenses related to CoGS are subtracted from gross income where a taxpayer is engaged in the manufacture or sale of goods. Treas Reg § 1.61-3. Businesses that provide services do not generally subtract expenses for CoGS, unless the

/ / /

---

[5] Defendant allowed most of Plaintiff's claimed insurance expense, so that may be why she provided no evidence of insurance expenses to the court.

business also sells or charges for materials and supplies used in its business. *See* IRS Publication 334, chapter 6 (Jan 20, 2011).[6]

Plaintiff claimed a CoGS expense of $35,151 on her 2010 Schedule C, of which Defendant found $253 was substantiated. Plaintiff provided an exhibit labeled "Cost of Goods Sold" that included receipts and invoices totaling $14,051. That exhibit included AOE checks totaling $11,082. The payments were to Les Schwab Tire Center, Triad Machinery, NAPA Auto Parks, and others. Plaintiff provided no explanation of how those payments qualified as CoGS expenses. Defendant previously allowed some of Plaintiff's claimed CoGS expenses under different expense categories, including repairs and maintenance. Plaintiff provided no evidence to substantiate any additional CoGS expenses beyond the $253 allowed by Defendant. The court finds that the CoGS deduction of $253 previously allowed by Defendant should be upheld.

2.     *Depreciation*

Taxpayers may deduct "a reasonable allowance for the exhaustion, wear and tear * * * of property used in [a] trade or business, or * * * held for the production of income." IRC § 167(a). "Depreciation is not necessarily predicated upon ownership of the property but rather upon an investment in property." *Karason v. Comm'r.*, 93 TCM (CCH) 1159, 2007 WL 1224613 at *4 (US Tax Ct). Plaintiff claimed a $35,004 depreciation deduction in 2010, of which Defendant accepted $27,804 for her business use of a Dodge truck. Defendant disallowed the remaining $7,200 claimed based on Plaintiff's failure to substantiate the purchase price or value of the Yanmar.

/ / /

---

[6] "Administrative guidance set forth in an informal IRS publication is not an authoritative source of Federal tax law and does not bind the Government." *Dorsey v. Comm'r*, 91 TCM (CCH) 907, WL 728345 at *1 (2006). The court cites Publication 334 only to describe general situations in which a service business might deduct CoGS.

Plaintiff provided a written agreement memorializing her purchase of the Yanmar from Chapman, in a related party transaction. The written agreement reported the sale price to be $22,500. Plaintiff provided no evidence of any payments to Chapman for the Yanmar, other than a check from AOE to Chapman for $500, dated over one year after the sale. The memo line of the check is blank. Plaintiff wrote that the check was for "interest," even though her written agreement with Chapman stated that the sale was at zero percent interest. As discussed above, related party transactions are subject to heightened scrutiny. Plaintiff's evidence of her purchase of the Yanmar from Chapman is inconsistent and inadequate to prove the sale price by a preponderance of the evidence. Even assuming that AOE acquired the Yanmar and placed it in service as of 2010, Plaintiff failed to present any persuasive evidence of its value. Plaintiff failed to provide persuasive evidence to support a depreciation deduction greater than the $27,804 previously allowed by Defendant. The court finds that the depreciation deduction of $27,804 allowed by Defendant should be upheld.

3.     *Insurance*

Treasury Regulation section 1.162-1(a) allows operating expenses for automobiles used in a trade or business, including auto insurance, and "insurance premiums against fire, storm, theft, accident, or other similar losses in the case of a business," to be deducted from gross income. Harris initially allowed $4,072 of Plaintiff's claimed insurance expense during the audit and the conference officer allowed an additional $50 for a total of $4,122. Plaintiff did not provide any evidence pertaining to insurance expenses. The court finds that the insurance expense deduction of $4,122 previously allowed by Defendant should be upheld.

/ / /

/ / /

4.      *Repairs and Maintenance*

If a taxpayer is not required to capitalize repair and maintenance expenses, then the taxpayer may deduct expenses paid for repairs and maintenance made to tangible property. Treas Reg § 1.162-4(a). As noted above, Plaintiff did not provide an exhibit pertaining to her claimed repair and maintenance expenses. Rather, she included some documents that appeared to pertain to repairs and maintenance in her CoGS exhibit. Defendant previously allowed Plaintiff a deduction of $4,969 for repair and maintenance expenses. Plaintiff did not present evidence to substantiate any additional repair and maintenance expenses. The court finds that Defendant's allowed deduction of $4,969 for repair and maintenance expenses should be upheld.

5.      *Taxes and Licenses*

Taxes listed in IRC section 164 are deductible when paid.[7] IRC § 164. A taxpayer may deduct licensing expenses that are ordinary, necessary, and adequately substantiated. *See generally* IRC § 162. Plaintiff provided an exhibit that contained canceled checks and documentation for license fees paid by AOE to the DMV, the Secretary of State, and the City of Donald. The court finds that Plaintiff's evidence substantiates expenses totaling $384. Of the $200 that AOE paid to the Secretary of State, the court finds that $50 should not be allowed because no business purpose was identified. The evidence presented indicated that the business registration fee was $150 and no explanation was provided to adequately account for the remaining $50 payment. Defendant previously allowed Plaintiff a deduction of $1,140 for taxes and licenses. Plaintiff failed to substantiate expenses for taxes and licenses in excess of what Defendant previously allowed. The court finds that Defendant's allowed deduction of $1,140 for tax and license expenses should be upheld.

---

[7] Treasury Regulation sections 1.164-2 and 1.275 list taxes for which no deduction is allowed.

6. *Utilities*

Plaintiff claimed a deduction of $1,979 for utilities expenses on her Schedule C. She offered no evidence to substantiate that amount. Defendant's evidence included AOE's 2010 general ledger prepared by AOE's bookkeeper in 2014, reporting three payments by check to PGE. No canceled checks were provided. Defendant did not allow Plaintiff any deduction for utilities expenses and the court finds that Plaintiff failed to present any persuasive evidence in support of her claimed utilities expenses.

7. *Fuel*

Plaintiff claimed a deduction of $9,443 for fuel expenses on her Schedule C. At trial, Plaintiff amended her claimed fuel expenses to $8,274. Plaintiff provided the court with an exhibit containing canceled AOE checks totaling $8,274. The canceled checks corresponded with invoices from Ernie Graham Oil that were in Chapman's name. Chapman had two accounts with Ernie Graham Oil, one of which he held on behalf of AOE because AOE had no credit history in 2010 to qualify for an account. McKillip testified persuasively regarding the amount of fuel one dump truck was likely to use per day depending on whether it was hauling. His testimony supported Plaintiff's claimed fuel expenses. Defendant previously allowed Plaintiff a deduction of $809 for fuel expenses. The court finds that Plaintiff presented evidence to substantiate her claimed fuel expense of $8,274. The court's allowed deduction for fuel expenses overrides the $809 fuel expense deduction previously allowed by Defendant.

8. *Bond Expenses*

Plaintiff claimed a deduction of $2,632 for bond expenses, of which Defendant allowed $100. Plaintiff presented no evidence of her bond expenses, so the court finds that the $100 deduction previously allowed by Defendant should be upheld.

### III. CONCLUSION

After careful consideration of the testimony and evidence presented, the court concludes that Plaintiff should be allowed a deduction of $8,274 for fuel expenses for the 2010 tax year. The deduction allowed for Plaintiff's fuel expenses overrides the $809 deduction previously allowed by Defendant. Plaintiff failed to present persuasive evidence to substantiate any amounts in excess of what Defendant previously allowed for cost of goods sold, depreciation, insurance, repairs and maintenance, taxes and licenses, utilities, or bonds. Defendant's adjustments to those expense deductions are upheld for the 2010 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that, for the 2010 tax year, Plaintiff is allowed a fuel expense deduction of $8,274. The deduction allowed for Plaintiff's fuel expenses overrides the $809 fuel expense deduction previously allowed by Defendant.

IT IS FURTHER DECIDED that, for the 2010 tax year, Plaintiff failed to present persuasive evidence to substantiate any amounts in excess of what Defendant previously allowed for cost of goods sold, depreciation, insurance, repairs and maintenance, taxes and licenses, utilities, or bonds. Defendant's adjustments to those expense deductions are upheld.

Dated this ____ day of September 2015.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on September 29, 2015.*